www.LRCgenerator.com Good morning, Your Honor. May it please the Court, my name is Winston Oliver Huff, and I'm here on behalf of plaintiff H-W Technologies today. Your Honor, I'm here on three issues, essentially. The invalidity of Claim 9, the invalidity of Claim 17, and the Court's improper construction of the term user in our case. Beginning with the invalidity of Claim 9, Your Honor, we believe that the Court should have upheld the certificate of correction as granted by the PTO. We don't believe, for example, Your Honor, that the error, that we believe that the error is evident on the face of the patent. We believe that the correction is subject, not subject to a reasonable debate when you consider the claim language and the specification. And we don't think that the prosecution history suggests a different interpretation of the claim. Even if the trial court could have accepted the certificate of correction from the PTO, isn't it true under our decision in Southwest Software that that would only apply to actions that were filed after the date of the correction? Yes, Your Honor, that is correct. And I think that there is a remedy there. That allows us maybe to move forward on a separate case against Overstock, but it doesn't invalidate Claims 9 and 17. But you didn't seek to amend your complaint when you asked the trial court to recognize their – well, actually, all you did was append it to a supplemental filing in your summary judgment. Yes, Your Honor, we did ask the court to consider the fact that we filed the certificate of correction. But your intent was to have them apply that kind of retrospectively as opposed to what is compelled under Rule 254, which is to – it only applies to a subsequent legal action, right? Yes, Your Honor. So assuming we don't agree with you that the district court should have considered or applied the certificate of correction, where are we left with regard to the validity claim of Claim 9? I think under those circumstances, Your Honor, Claim 9 would still be invalid as it relates to Overstock. I'm not sure how that relates to other defendants. It would still be – I'm sorry. Invalid as it relates to Overstock. On what grounds? Because the court didn't properly consider our – didn't consider our certificate of correction, and they invalidated the claim. Okay, but your argument, as I understand it, is that it's not indefinite because even without that limitation, it could still stand on its own. That's correct, Your Honor. I think one of Warden Averskilling, in reading the patent, the face of the patent, would understand that that claim should have been included into – I'm sorry, that element should have been included. There was a considerable delay in the effort to seek correction at the patent office. How does that weigh in here? Your Honor, it's not a great error – I mean, not a great fact for us, but it's not a fatal fact. There's no timeline, essentially, that allows – Isn't there an obligation on you all to look at the claim after it's granted and make sure that it's correct? I think it's an obligation on behalf of the patent prosecutors, yes, Your Honor. But we're not – we weren't the patent prosecutors, and we only got the patent years later. But your client is your client. I mean, I guess blaming another set of counsel doesn't quite cut it, does it? I'm not – I don't want to blame the other counsel, but it does make a difference in when the actual error occurred, Your Honor. Right, but we're saying it's the client's problem, not the lawyer's problem. Maybe they depended on their lawyers, but it's the client who had the obligation to examine its own patent and determine that it was properly issued. That's correct, Your Honor. In my case, that client's not that sophisticated. But this is brought to your attention, and then you go almost all the way to a summary judgment before you seek correction. You're asserting at great length this patent without a material limitation. That's correct, Your Honor. I believe that because one of ordinary skilling would understand what the limits of the claim are. So there was some discussion amongst us whether correction was even necessary. Upon reading Claims 1 and Claims 17, it's very clear to see and reading the patent that the goal of the patent is to be able to complete user transactions without the need to make a voice call. Clearly, that element should have been included in Claim 9 as it is in the other independent claims in this case. You filed a certificate for correction, so essentially you've acknowledged that the Claim 9 without that limitation was not what the examiner and the patent office passed on when it issued the claim, right? I think the certificate of correction acknowledges that the patent office didn't print properly what the patent office granted my client. Right. Right. Okay. Okay. So just back to the point. I'm sorry. I wasn't quite clear. So at least did you acknowledge a few minutes ago that at least with respect to the current litigation, if we disagree with you that the district court should have recognized retrospectively the certificate of correction, then you agree that those claims are not assertable against the other side at this juncture?  I think that's correct, Your Honor, if you also agree that the error was so material that it could not be corrected. And we just don't think that that's the case here. We think the error was readily apparent. No, no, no. But I've assumed that we disagree with your argument. We think that the district – I mean, if you were to prevail on that, then the district court would have been wrong in not allowing the certificate of correction to inert, right? Right. And in this case, I do think the district court was wrong. Right. Can I ask just what is your understanding of the district court's invalidation of Claim 17 and in particular Claim 9? I mean, he decided that it fell because it was indefinite. But that simply had to do with the original claim that we all agree was not the same as the claim that the examiner passed on. So you – do you understand your ability now to proceed on the corrected claim but not on any cause of action that preceded the correction? That's the upshot of what the district court did. Is that your understanding? That is my understanding, Your Honor. So with respect to – so that's Claim 9. Yes. With respect to Claim 17, the district court's determination of invalidity was premised on something else. It didn't have anything to do with a missing limitation. That's correct, Your Honor. It had to do with too many limitations. That's correct. The district court, as it relates to Claim 17, I think improperly applied the holdings in IPXL and CATS. In our Claim 17, we think that the where-in clause is just described functional limitations for an apparatus. It just describes exactly how – describes what would happen when you use the fringing technology in a certain way. In IPXL and in CATS, for example, in CATS, the claims were directed to a system for user input, and then the claim goes on to say, and the user uses that input. In our case, we're not claiming a system for using a tangible computer-readable medium. We're just merely outlining how this medium is used and what – if you did the – Well, I mean, I could see if that was in a preamble, if the language about the user was in a preamble, but this is part of the claim. And so I guess I'm not – I'm trying to understand how you can pull it out of the claim. Well, I'm not suggesting that we're pulling it out of the claim. What I'm suggesting is that we're not. Our functional limitations aren't directed to how to use what we are claiming. I think to be – Explain to me how where-in said user completes a transaction with at least one of said merchants listed without the need to generate a voice call, and where-in said user selects one of said variety of offers associated with said one of said merchants listed. How are those functional limitations? Well, it basically says that if you create a device that can perform these functions, then you infringe. If you don't have these functional limitations, our claim is extremely broad. I mean, for example, in Claim 1, receiving a command – I'm sorry, Claim 17, receiving a command to perform a contextual search, receiving search criteria from a user for an IP phone, submitting that search criteria, and receiving back a list, that does not in itself limit anything. I mean, computers can do that. Old phones can do that. And that's not what we are claiming here. You have to have those things, and those things have to be for a specific purpose, and that's namely being able to complete a transaction without having to call the merchant. Right, but it doesn't say that this computer-readable medium is created in such a way that would permit this activity. It actually says where-in said user completes the transaction. That's also correct, and it kind of goes into our argument about the course construction of our user. If you allow us to have our construction of user, which is a person or thing that uses, I think the claim reads quite differently. For example, you could say where-in said software completes a transaction, where-in said information received by the software comprises a variety of offers, where-in user's contact and payment information is stored by the software, it's not transmitted. So if we get our construction of the term user, Claim 17 changes tremendously, and you don't have the problems that the court is asking. I was going to ask you about that because I wanted to ensure that that was the relationship you saw. In other words, whether or not claim construction was really necessarily in play here if we were to affirm on the validity. But you're saying here that you kind of need to discuss the claim construction in order to assess what the district court judge did with regard to Claim 17? That's correct, Your Honor. You absolutely do. And if we disagree with you on claim construction, does that end the matter, or do you still think you have an argument to be made about functional claiming? I think we run into a problem on functional claiming, Your Honor, without our construction. Quite simply, it just becomes more difficult to explain how user functional limitations without our construction. I appreciate that. Yes. I want to save you rebuttal time, Mr. Huff. Yes, Your Honor. Thank you. Thank you. Mr. Barr? Thank you, John Barr from defendantoverstock.com. The court should affirm the judgment of the district court because both Claims 9 and 17 are invalid. The court should also affirm the district court's claim construction in this case. I'm struggling a little with the district court's use of the 112 indefiniteness analysis with regard to Claim 9, as you might have been able to tell by questions to your friend. Is it necessary that you even go there here? I mean, is there not a principle that if we conclude that the district court was right, in other words, that it was not incumbent upon him to consider the certification, that the certification only applies prospectively to future litigation, why doesn't that end the matter with respect to the version of Claim 9 that was originally pressed, that is now almost kind of mooted out by subsequent events? Does that end the case for us? I think that would end the case, Judge Prost. I think the issue here, of course, there's a test, and the first thing that happens is the error must be apparent from the face of the patent, and the error was not apparent from the face of the patent here. And, of course, that was admitted by the appellants when they filed their certificate of correction, that there was a material limitation missing. And so I believe that would end the matter. So the legal theory that you rely upon on appeal and that the district court relied upon below, which was indefiniteness, is not actually the appropriate legal theory here? I think it is an appropriate legal theory because I think the claim is indefinite. It's missing a material limitation. It's missing a limitation, but even without the limitation, it's clear what it says. I mean, that doesn't necessarily mean it's indefinite. You just jump from the notion that if it's missing a limitation, it must be indefinite. I don't understand how you get there as a matter of legal theory. There might be another reason that it's invalid or unenforceable, but the mere fact that it's missing a limitation or one of the ones that was actually granted as part of the claim doesn't mean it's indefinite. Your Honor, we would argue that the mere fact that it is missing a limitation does mean that it's indefinite under 112, now 112B, that the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor regards as the invention. Since there was a material limitation missing, and it's undisputed that there was a material limitation missing, it fails under 112B. But isn't that a little inconsistent? I mean, your argument is that it had to be so clearly part of his invention in order to fall under 112B, but if it was so clearly part of his invention from the face of the patent, then why wouldn't you correct it? It wasn't clear from the face of the patent. It's clear from the prosecution history. I mean, well, that's the problem. That's the problem. You're supposed to be looking at the written description, are you not? You are. And if we were able to tell from the face of the patent that this limitation was missing, that would be a problem for us. Right. But why is it that you can go to prosecution history for 112B purposes, but you can't go to prosecution history for the correction purposes? It just seems like you're arguing two sides of the coin here. Okay. Well, under the Novo Industries test, that's what sets out the three things that need to be there if the district court is going to correct a problem like this. First of all, the error needs to be apparent from the face of the patent. Next, the correction cannot be subject to reasonable debate based on the spec and the claims. And third, the prosecution history must not suggest a different interpretation. And under 112B, it's the same analysis, essentially, that under 112B, in order to fall within there for purposes of indefiniteness, you have to find that from the face of the patent and its written description, that, in fact, it doesn't claim the invention. What was intended as the invention. And you're telling me you can't tell from the face of the patent that this was intended to be the invention. That's right. And the prosecution history is also part of looking at – you can look at prosecution history also to determine what the patent is. And here, the prosecution history clearly required this limitation wherein said user completes a transaction without the need to generate a voice call. Can I – you – I think the struggle with the indefiniteness thing is whether you're right or wrong at the end of the day. It seems like there's no cases that really support. I mean, you're distinguishing between allegedly two prongs in 112B, right? And you're relying on the first prong. And not only is there a dearth of cases, I think, that go to just striking down a claim that's indefinite based on that prong. But there's some suggestion in the Southwest case, and maybe even in Group 1, is under these circumstances, we ask the district court to look at whether or not the claim would have been invalid. Not on indefiniteness, but I think on other grounds. And that seems to be in tension with the framework you're advocating here. I think that's – I see what you're struggling with. And we – you know, the Group 1 case was very analogous here. And I think there the court did find indefiniteness was the grounds, at least I think the court said. And there we had a similar situation wherein Group 1 Claim 9 read coherently without the limitation. And the specification didn't suggest and the limitation was missing. Same kind of facts that we have here. And so that was where the court held that it was indefinite. I may be wrong. I can't recall that they analyzed this under 112. I thought there was just some suggestion. Nobody was disputing that it would have been invalid in any event. But I didn't see the discussion of indefiniteness. But you may be right on that. Well, in Group 1, they did talk about indefiniteness. In that particular case, the court actually looked at the claim and said without this limitation, not just because it's not there, but without this limitation, you are missing a critical piece of what was clearly the invention from the face of the specification. And in that particular – and it said it doesn't work without that limitation. In our case, Claim 9 would work. Whether it would be obvious or not, that doesn't mean it doesn't work. And so Group 1 is distinguishable. And you've got – and you don't even cite Southwest Software where the court said you have to go back and actually look and analyze whether or not the claim without that limitation is otherwise valid. And going back to your 112B, you're wrong because Allen Engineering specifically said that you're limited to the specification for purposes of 112B. You do not go to the prosecution history. Well, as to Judge O'Malley, as to the Group 1, we do have a similar situation in Group 1 because here, this limitation was in this patent claim from the moment it was filed. And there was even at the end when the examiner granted the notice of allowance, the claim was again restated with the same limitation in it, which did not appear in the printed patent. So I don't think we can say that this claim would work or that it would be valid without the limitation. And you're correct, we did not cite Southwest Software, although it does support us here, as you noted in your questions to Mr. Huff. And here, of course, we wrote them a letter right after they sued us and told them that the claim was missing a limitation. We wrote that in October. Nothing was done. They acknowledged getting our letter. They didn't do anything about it. Months, that was in October. In January, we filed a summary judgment on the basis that the limitation was missing. They didn't do anything about it. They didn't do anything about it when they filed their response. And then four months after their response was filed, they finally filed a correction notice. So clearly, the problem here is that the limitation is not apparent from the face of the patent, but it is required, as is evidenced by the prosecution history. Moving on to Claim 17. The problem here is that both an apparatus and method of using the apparatus is claimed in Claim 17. As you just, I think it was Judge O'Malley a minute ago, pointed out about the where-in clause. This is very similar to the CATS case. In fact, in CATS, they had very similar language. In CATS, it was where-in callers digitally entered data. So here we have where-in the user completes a transaction and where-in said user selects one of a said variety of offers. So these are all things that are actions that are done by the user, which is why they're not functional limitations. And the problem is that it creates confusion as to direct infringement. We don't know if the infringement occurs when the apparatus is created that's in the first part of Claim 17 or whether the infringement occurs when the method claim actions are taken by the user, the where-in clause. Let me ask you the sort of opposite of the question that Judge Prost asked your friend on the other side, and that is that if we disagree with you on the claim construction and conclude that a user could be, for instance, a software application, does that change the issue of the definiteness or indefiniteness of Claim 17? No. No, Judge Romano would not. First of all, it's not going to change the functional or the structural problem with this claim, that it claims both apparatus claims and method claims in the same claim, which is prohibited by the MPP and by the case law that we've cited, including CATS and IPXL. Secondly, as when Mr. Huff was arguing, he started adding additional words into the claim that he would need in order to make this claim read on a thing other than a user, and those were never requested below. And there's no basis for them in the intrinsic evidence. So would he have a problem in that his argument as to what a user is is not just a thing, but it's a person or a thing? In other words, if it was just a thing and just a software, then that might change Claim 17. I don't believe that it would. I think Claim 17 dies because of the way it's written. It's got apparatus claims at the beginning, and it's got method claims at the bottom. So the fact, whatever the court decides that user means isn't going to have any effect on interpreting the way that Claim 17 is written and the fatal flaw that Claim 17 has, as pointed out in CATS and IPXL. And that's why also that Claim 17 is not analogous to microprocessor, which was the case that was relied upon by HW in their brief. In that case, there was structural limitations for the device, but the issue is that these were not user action. In our case, Claim 17 requires user action, and that was not what happened in microprocessor. In fact, the CATS court specifically distinguished the microprocessor case on the same basis. So turning to the claim construction issue, the court construed the claim as a consumer operating the IP phone, and the court explicitly determined that this construction was mandated by the intrinsic evidence. I believe the district court noted in its opinion that the intrinsic evidence that was cited by the appellee was compelling. And it's clear from the specification and the claims of two things. One, that the user is a person. And secondly, that that person is a consumer that uses the IP phone. The user performs human functions in the claim language. They provide search criteria. The user selects an offer. The user provides payment information. A thing does not have payment information. The claim language distinguishes between the user and the IP phone, the server, and the software. These are all the things that HW would like to capture with this construction. The user has to have a finger too, right? Exactly, Judge O'Malley. The user has to have a finger to be able to touch a screen. The user has to be able to pick pizza toppings. There's a lot of things in this patent that make it clear that a user is a person and a consumer. And the Z4 technology versus Microsoft case, the court held that where the claims and the specification distinguish the user from the computer, it would be improper to construe the user to include the computer. And that's the same situation we have here. We've got the pizza toppings. We've got pressing the screen with a finger. And we've got a voting application. So, a thing cannot vote. So, it's clear that the user here is a consumer because these are all human functions. The specification also repeatedly equates the user with a consumer. And at column 16, the consumers are the users of TADS client-side elements. Then at column 20, lines 35 through 38, a TA is a relatively small hosted application that enables the user of the VOIP agent, and then in parentheses, a consumer, to complete commercial transactions with one or more vendors. HW has not cited any intrinsic evidence at all in their brief to suggest that a user is a thing or a software. The only reference at all that was made to the intrinsic evidence in the briefing was where HW cites the joint claim construction notification that was filed, which did list, he did list some intrinsic evidence there, but that intrinsic evidence did not make its way into any of the briefing, has never been explained, has never been argued why it applies or why it mandates. Well, they do say something, but for the first time in their reply brief, right? Something from the specification? I don't believe so, Your Honor. The thing that they cited repeatedly was this dictionary definition for learning English that was cited both below and in the brief. He did, you're right, in the reply brief, there was a note to the record of intrinsic evidence. However, when you look at that, you will see that that record site is the joint claim construction filing, where the parties under the rules file our claim terms and put intrinsic evidence for those claim terms with the court. But that was never explained or briefed or argued, either in the briefing to this court or in the briefing to Judge Fish in the Northern District of Texas. The other argument that HW made about a potential divided infringement defense, of course, that's not an issue for claim construction, that's an issue for infringement. While the court should construe claims to preserve validity where possible, the court can't rewrite the claim. And the issue regarding intrinsic evidence, I believe HW relies heavily on the Texas Digital case, which was overruled in the Phillips case. And obviously dictionary definitions can be used, but they never take preference over the intrinsic evidence, which is what we cited and which is what the court relied upon below. The only place where we mentioned any dictionary definitions is where we cited in a footnote in our briefing that the dictionary definition that HW cited was a learner's dictionary and was not, in fact, a general purpose dictionary. We cited that simply to make that point. So in closing, we believe that the court should affirm the final judgment of the district court. Do you have any additional questions? Thank you, Mr. Barr.  Four minutes remaining. Thank you, Your Honor. Just wanted to touch on a couple points. Oversight goes to great lengths to get this court to believe that the error is not apparent on the face of the patent. We disagree. We think that what the intention of the patent and technology is disclosed on the record at A79, specifically at column 23, lines 10 through 15. We also think that the error is apparent from reading claims 1 and 17. My counsel also discusses that you can tell the error from the prosecution history. We also think that that's helpful for us. I mean, the prosecution history clearly makes clear that the error should have been in claim 9 and just was not there as a result of PTO. Finally, Your Honor, as it relates to the indefinite article, group 1 is not necessarily analogous to our case. In group 1, the claim was never corrected and while we belatedly corrected ours, we did correct it. Additionally, all the claims in the group 1 case had the same error. So you can't look to the claims to determine where the missing element should be. Finally, Your Honor, we'd like to distinguish Z4 as it relates to claim construction. In the Z4 case, the patentee was trying to get user to mean a person or a person. In Z4, the patentee was trying to get the user to be just simply a computer. That's not what we're alleging here. We're just saying it can be a person or software, either one. Thank you, Your Honor. Thank you very much.